UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KATHERINE W., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-02466-TWP-TAB |
| ) | |
| KILOLO KIJAKAZI Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S REQUEST FOR REMAND**

**I.    Introduction**

Plaintiff Katherine W. appeals the Social Security Administration's denial of her application for disability insurance benefits. Plaintiff argues the Administrative Law Judge's decision is not supported by substantial evidence. Specifically, Plaintiff claims that the ALJ failed to provide justification or reasoning to support the ALJ's conclusion that Plaintiff could use her bilateral hands for frequent handling and frequent fingering and omitted consideration of fatigue. In addition, Plaintiff argues that the ALJ's application of SSR 16-3p was erroneous in assessing Plaintiff's subjective symptoms. As discussed below, the ALJ reasonably assessed the medical source opinions, and Plaintiff has not shown greater restrictions were warranted for her hand pain or fatigue. In addition, the ALJ properly evaluated Plaintiff's subjective symptoms. The ALJ's decision is reasonable and supported by substantial evidence. Thus, Plaintiff's request for remand should be denied. [Filing No. 10.]

**II.  Background**

In March 2019, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning on April 12, 2017. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. Before reaching step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act on December 31, 2019. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of April 12, 2017, through her date last insured of December 31, 2019. At step two, the ALJ determined that Plaintiff had the following severe impairments: Dupuytren's contracture in bilateral hands; left foot plantar fascia fibromatosis; right foot valgus deformity; degenerative joint disease of bilateral feet and hands; rheumatoid arthritis; hypertension; major depressive disorder; generalized anxiety disorder; and panic disorder without agoraphobia. [Filing No. 8-2, at ECF p. 28.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to work despite her limitations. The ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [Plaintiff was capable of] walking and standing four hours in an eight-hour workday. [Plaintiff] could occasionally climb ramps and stairs; frequently balance, stoop, kneel, crouch, or crawl, but should avoid climbing ladders, ropes, or scaffolds, and unprotected heights. [Plaintiff] could frequently work around moving mechanical parts; and frequently operate a motor vehicle. She could finger and handle frequently with the bilateral upper extremities. [Plaintiff] could

have occasional exposure to extreme cold.  Further, [Plaintiff] could perform simple, routine tasks.  She could frequently interact with supervisors, coworkers, and the public.

[Filing No. 8-2, at ECF p. 31.]

At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work.  Finally, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC before concluding that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including routing clerk, general office helper, and mail clerk.  [Filing No. 8-2, at ECF p. 38.]  Accordingly, the ALJ concluded that Plaintiff was not disabled.

**III.    Discussion**

Plaintiff argues that the ALJ failed to explain any basis in evidence to support an RFC indicating she can use bilateral hands for frequent handling and frequent reaching.  In addition, Plaintiff claims the ALJ's application of SSR 16-3p in assessing her symptoms was erroneous. [Filing No. 14, at ECF p. 14.]  The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

3

     A.     **Function-by-Function Analysis of Plaintiff's RFC**

Plaintiff argues that the ALJ never explained the rationale behind her RFC findings—particularly, that Plaintiff would not have much greater hand limitations. The ALJ determined that Plaintiff had the following severe impairments: Dupuytren's contracture in bilateral hands; left foot plantar fascia fibromatosis; right foot valgus deformity; degenerative joint disease of bilateral feet and hands; rheumatoid arthritis; hypertension; major depressive disorder; generalized anxiety disorder; and panic disorder without agoraphobia. [Filing No. 8-2, at ECF p. 28.] Despite these and other nonsevere impairments, the ALJ found Plaintiff remained capable of performing light work, subject to various additional limitations. In relation to her hands, the ALJ found Plaintiff could finger and handle frequently with the bilateral upper extremities. [Filing No. 8-2, at ECF p. 31.]

Plaintiff argues that the ALJ pulled restrictions out of thin air, with no basis in the evidence. In addition, Plaintiff claims that the ALJ merely summarized a portion of the record evidence, but the record as a whole "paints a much different and much more severe picture." [Filing No. 10, at ECF p. 23.] For instance, Plaintiff argues that a more thorough review of the record reveals more significant findings that the ALJ ignored, including Dr. Richard Yomi Aina observing deformity, tenderness, and bony tenderness [Filing No. 8-7, at ECF p. 72] and Plaintiff's Dupuytren's contracture diagnosis. [Filing No. 8-7, at ECF p. 139.] Similarly, Dr. Nighat Tahir observed osteoarthritic changes of Plaintiff's hands; tenderness to palpation in many hand joints; nodules in the left palm concerning for Dupuytren's contracture; somewhat decreased range of motion in the shoulders; and painful compression of the metatarsophalangeal (MTP) joints. [Filing No. 8-7, at ECF p. 174, 203.]

However, the ALJ addressed the bulk of this evidence. The ALJ included Dr. Aina's notes regarding bilateral hand pain and diagnosis of Dupuytren's contracture of the hand—which the ALJ also included as a severe impairment. [Filing No. 8-2, at ECF p. 32, 28.] The ALJ dedicated three full paragraphs of her decision to her analysis of Dr. Tahir's records. The ALJ specifically summarized Dr. Tahir's findings regarding early osteoarthritis changes of the hands, tenderness to palpation of many hand joints, nodules on the left palm concerning Dupuytren's contracture, somewhat decreased range of motion in her shoulders, and painful MTP compression—the very findings Plaintiff claims the ALJ ignored. [Filing No. 8-2, at ECF p. 34.] In addition, the ALJ noted that Dr. Tahir reported subcutaneous nodules on Plaintiff's left mid foot and right distal foot on the plantar side, and multiple tender points in the neck, back, anterior chest, greater tuberosity, and close to the elbows and knees. [Filing No. 8-2, at ECF p. 34.] However, the ALJ noted that the remainder of that examination in December 2018 was within normal limits. Dr. Tahir prescribed gabapentin and Voltaren gel, and encouraged lifestyle changes and regular exercise to help in treatment. An x-ray of Plaintiff's hands showed minimal degenerative changes, and radiology studies of her feet revealed mild degenerative changes. [Filing No. 8-2, at ECF p. 34.]

Plaintiff also refers to her symptoms as noted in Dr. Tahir's treatment notes, such as difficulties with arthralgias, performing activities of daily living, morning stiffness, muscle weakness, knots in her feet and hands, and back pain. [Filing No. 10, at ECF p. 23-24.] Plaintiff points out that she attended physical therapy for her hands, though she did not meet all of her therapy goals. Finally, Plaintiff references more medical evidence noting her subjective complaints of pain, and her hearing testimony regarding the same and noting her limited

activities of daily living. As noted below, the ALJ properly assessed Plaintiff's subjective symptom complaints.

As pointed out by the Commissioner, the ALJ reasonably considered and assessed the objective medical findings, the frequency and success of treatment, Plaintiff's statements about her limits and stated reasons for not working, and prior administrative findings of state agency physician Dr. M. Brill that Plaintiff was not disabled and could perform a range of light work capacity in determining Plaintiff's RFC. [Filing No. 13, at ECF p. 10.] In fact, the ALJ limited Plaintiff to a slightly greater degree than Dr. Brill. The ALJ explained that she found Dr. Brill's opinion partially persuasive because the state agency consultant was not a treating or examining physician, and additional evidence received at the hearing level showed Plaintiff was slightly more limited than Dr. Brill determined. For example, while Dr. Brill assessed Plaintiff as having the ability to stand or walk for six hours of an eight-hour workday, the ALJ limited Plaintiff to four hours. In addition, the ALJ limited Plaintiff to occasionally, rather than frequently, climbing ramps and stairs; never, instead of occasionally, climbing ladders, ropes, or scaffolds; and added limits for never working at unprotected heights, frequently working around moving mechanical parts and operating a motor vehicle, and occasional exposure to extreme cold. [Filing No. 8-2, at ECF p. 31.] The additional limits assessed by the ALJ gave Plaintiff the benefit of the doubt that the evidence submitted after Dr. Brill reviewed the record showed slightly greater limits that the state agency physician found.

Plaintiff specifically takes issue with the ALJ's finding regarding frequent handling and fingering. However, this finding is identical to the manual restrictions Dr. Brill assessed. [Filing No. 8-3, at ECF p. 46.] While Plaintiff claims the ALJ provided no justification or reasoning for this limit, the ALJ specifically referenced this portion of Dr. Brill's opinion before explaining

that she found his full work capacity finding partially persuasive. Furthermore, though Plaintiff argues that her hands were chronically swollen and painful, and thus incapable of strenuous activity, the ALJ did not conclude that Plaintiff could perform strenuous work activity. Rather, the ALJ restricted Plaintiff to a limited range of light work—a lesser work capacity than Plaintiff performed in her prior jobs as assistant manager and cashier checker. [Filing No. 8-2, at ECF p. 37.] Thus, Plaintiff's arguments in this regard provide no basis for remand.

More concerning, however, is the ALJ's failure to consider Plaintiff's complaints of fatigue. Plaintiff argues that the ALJ omitted consideration of her repeated complaints of fatigue, noting that the medical record is replete with references to Plaintiff's multifactorial fatigue. [Filing No. 8-6, at ECF p. 27, 33; Filing No. 8-7, at ECF p. 72, 94, 170, 174, 198, 284, 292, 297, 377; Filing No. 8-8, at ECF p. 36, 80, 93; Filing No. 8-9, at ECF p. 43; Filing No. 8-10, at ECF p. 101, 140.] In addition, Plaintiff reported dealing with fatigue and napping for long periods during the day in her function reports and at the hearing. [Filing No. 8-6, at ECF p. 27, 33; Filing No. 8-13, at ECF p. 40.] The ALJ made no finding as to whether Plaintiff's fatigue was severe. Indeed, the ALJ's decision makes no mention of fatigue whatsoever.

Similarly, the Commissioner's response brief omits any direct reference to Plaintiff's fatigue-related arguments. Rather, the Commissioner simply notes that the ALJ reasonably considered clinical findings, Plaintiff's subjective symptoms, and prior administrative medical findings in concluding that Plaintiff remained capable of a range work capacity that accommodated multiple mental limits. [Filing No. 13, at ECF p. 10.] While the Commissioner's omission is troubling, the Court's concern is mitigated for multiple reasons. First, Plaintiff's three-page reply brief failed to even mention this omission, suggesting perhaps this omission is not so significant after all. [Filing No. 15.] Rather than noting this omission, Plaintiff's counsel

7

simply filed a *pro forma* reply[1] that completely ignored it. It is the parties' obligation to thoroughly vet and develop issues, not the Court's. *See, e.g., U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs."). In fairness, Plaintiff raised the issue of fatigue in her initial brief. Therefore, this is not a situation where an argument was waived. However, Plaintiff's failure to seize on the Commissioner's lack of argument in her reply helps neither Plaintiff nor the Court, and suggests Plaintiff must not have thought it to be significant.

Second, Plaintiff has not highlighted any evidence indicating additional physical or mental work restrictions were necessary beyond the limitations imposed by the ALJ. Plaintiff conflates an alleged symptom with an impairment. While Plaintiff lists evidence that she believes supports disability, including her complaints of fatigue, she does not identify any medical source opinions or other evidence that would compel restrictions greater than the range of unskilled light work the ALJ found her capable of completing. Plaintiff effectively asks the Court to re-weigh the evidence to reach her preferred conclusion, which the Court cannot do. *See, e.g., Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (acknowledging that the court's role on review does not include reweighing the evidence). Thus, the ALJ's failure to specifically address Plaintiff's complaints of fatigue does not support remand.

---

[1] This Court has previously admonished Plaintiff's counsel for using the same "cookie cutter three-page reply brief in at least three other social security appeals pending[.]" *Sharee M. v. Kijakazi*, No. 1:20-cv-3214-JMS-MG, 2022 WL 557125, at *4, n. 5 (S.D. Ind. Feb. 24, 2022). The *Sharee M.* decision was docketed more than two months before Plaintiff's counsel filed her reply brief in this case, which added one original paragraph to an otherwise identical reply. [Filing No. 15.] If Counsel ignores this admonishment, she does so at her own peril.

**B.     Subjective Symptom Assessment**

Plaintiff next argues that the ALJ erroneously applied SSR 16-3p in assessing her symptoms. [Filing No. 10, at ECF p. 29.] The regulations describe a two-step process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Filing No. 8-2, at ECF p. 32.] Plaintiff claims the ALJ "essentially made no attempt to satisfy the requirements of SSR 16-3p." [Filing No. 10, at ECF p. 30.] Plaintiff noted that the ALJ summarized Plaintiff's testimony and selective parts of the record but found that while the record demonstrated the presence of physical impairments, they were not of the severity Plaintiff alleged. The ALJ noted that Plaintiff reported on several occasions that her treatment for her fingers, wrists, and joint pain had been successful. [Filing No. 8-2, at ECF p. 35.] Plaintiff argues that the ALJ failed to acknowledge that several periods of "successful" treatment were short-lived. For instance, Plaintiff's finger injections provided only 50% relief for three to four days; her left palm injection provided no relief; and a right foot pad injection provided 80-100% relief, but within a month a second injection was ordered, which provided no relief. [Filing No. 8-10, at ECF p. 26-27.]

9

However, the ALJ largely acknowledged these specific facts related to Plaintiff's treatment success.  The ALJ specifically stated in her decision: [Plaintiff] reported 50% relief after the injections to her fingers, and 100% relief after the right foot injection in June 2020 with a repeat injection in August 2020." [Filing No. 8-2, at ECF p. 33.]

Moreover, the ALJ also factored in the gaps in Plaintiff's treatment history.  For instance, a physical therapist discharged Plaintiff for failing to show up to her scheduled appointments in June 2019.  [Filing No. 8-2, at ECF p. 33.]  In addition, Plaintiff failed to follow up with Dr. Tahir for 10 months between October 2019 and August 2020, which the ALJ found suggested her pain was not as severe as alleged.  [Filing No. 8-2, at ECF p. 35.]  Plaintiff notes that while she did not see Dr. Tahir during those 10 months, she did not have a gap in all treatment during that timeframe.  She was still getting regular treatment with pain management and physical therapy for various issues.  In addition, Plaintiff acknowledged that she missed an appointment with Dr. Tahir due to the coronavirus pandemic.  Still, she did not attribute the 10-month gap in her visits with Dr. Tahir to the pandemic; rather, she reported successful treatment with prescription Gabapentin during that period.  [Filing No. 8-10, at ECF p. 157-58.]  The ALJ also discussed in-person follow up appointments in September 2020 and January 2021, when Plaintiff was examined by Dr. Tahir and prescribed Plaquenil that improved her symptoms.  [Filing No. 8-2, at ECF p. 35.]  Thus, contrary to Plaintiff's assertions, the ALJ complied with the SSA's regulatory requirements.  The ALJ provided specific reasons for evaluating Plaintiff's symptoms and an evidentiary basis for her findings.

The ALJ's decision demonstrates consideration of Plaintiff's own statements to her healthcare providers and in her agency reports, her hearing testimony, and her medical providers' observations and objective findings.  The ALJ reasonably considered Plaintiff's use of

medication, treatment history, and daily activities in reaching the conclusion that she was not completely disabled.

### IV. Conclusion

Because the ALJ's findings were supported by substantial evidence, Plaintiff's request for remand should be denied. [Filing No. 10.] Any objection to the magistrate judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within 14 days shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 6/14/2022

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email