UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KATHERINE W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-02466-TWP-TAB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) |
| | ) |
| Defendant. | ) |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION AND AFFIRMING DECISION**

Plaintiff Katherine W.[1] ("Katherine") appeals the Administrative Law Judge's decision denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636, the Court referred the matter to the Magistrate Judge, (Filing No. 14), who submitted his Report and Recommendation on June 14, 2022, recommending that the decision of the Commissioner be affirmed (Filing No. 18). Katherine timely filed Objections to the Magistrate Judge's Report and Recommendation (Filing No. 19). For the reasons set forth below, the Court **OVERRULES** Katherine's objections and **ADOPTS** the Magistrate Judge's Report and Recommendation **with modification**, **AFFIRMING** the decision of the Commissioner.

### I.   BACKGROUND

An extensive elaboration of the procedural and factual background of this matter is unnecessary as the parties and the Magistrate Judge have sufficiently detailed the background of

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

this matter in the briefs and the Report and Recommendation.  The Court mentions only those facts pertinent to this ruling.

Katherine protectively filed her application for DIB on March 11, 2019, alleging April 12, 2017 as the disability onset date. In her DIB application, Katherine asserted the following impairments: arthritis, fibromyalgia, gout, issues with fingers, problems with feet, fatigue, Dupuytren's contracture in left hand, and high blood pressure (Filing No. 8-3 at 23).

Katherine's application was denied initially on June 11, 2019, and again on reconsideration on September 16, 2019.  Katherine timely requested a hearing on her application, which was held before Administrative Law Judge Livia Morales ("ALJ") on March 24, 2021, via telephone due to the COVID-19 pandemic.  The ALJ then issued her decision on April 6, 2021, denying Katherine's application, having determined that she was not disabled.  Katherine sought review of the ALJ's decision by the Appeals Council.  On July 22, 2021, the Appeals Council denied Katherine's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

Katherine timely filed her Complaint with the Court on September 20, 2021, seeking judicial review of the Commissioner's decision. On April 12, 2022, this Court issued an Order referring the matter to the Magistrate Judge for a report and recommendation.  On June 14, 2022, the Magistrate Judge filed his Report and Recommendation adopting the decision of the ALJ and Commissioner.  Thereafter, on June 28, 2022, Katherine filed her Objections to the Report and Recommendation, asserting that the Magistrate Judge used an improper standard in reviewing the ALJ's decision, and that the ALJ erred by failing to consider Katherine's fatigue and inappropriately analyzing Katherine's subjective symptoms.

## II.     LEGAL STANDARD

When the Court reviews the Commissioner's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision, and while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176. The Court "must be able to trace the ALJ's path of reasoning" from the evidence to her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo*, determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. *See* Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions . . . to which timely objections have not been raised by a party." *Sweet v. Colvin*, No. 12-cv-439, 2013 WL 5487358, at *1 (S.D. Ind. Sept. 30, 2013) (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–61 (7th Cir. 2009)).

### III.  DISCUSSION

In her objections to the Report and Recommendation, Katherine argues the Magistrate Judge should not have applied a "substantial evidence" standing in reviewing the ALJ's decision. Katherine also argues the ALJ erred in conducting her five-step analysis under 20 C.F.R. § 404.1520 and in determining Katherine's residual functional capacity ("RFC") by failing to mention Katherine's fatigue, and she objects to the Magistrate Judge's conclusion that this error does not warrant remand.  Katherine lastly argues that the ALJ erred in assessing Katherine's subjective allegations of her symptoms by failing to adequately support the assessment and by ignoring evidence of the short-lived nature of Katherine's successful treatments and the gaps in her treatments.  The Commissioner responds that the ALJ's error in omitting discussion of Katherine's fatigue was harmless and that the ALJ sufficiently explained the bases for her determination regarding Katherine's subjective allegations of her symptoms.  The Court will address each issue raised in Katherine's objections to the Report and Recommendation in turn.

**A.    Substantial Evidence Standard**

Katherine objects to the Magistrate Judge's use of the "substantial evidence" standard under the United States Supreme Court's decision in *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019), in evaluating the ALJ's decision (Filing No. 19 at 2).  Despite citing the substantial evidence standard in her Brief in Support of Complaint For Review, (Filing No. 10 at 19), Katherine now argues the ALJ's decision is not entitled to deference under the substantial evidence standard because the ALJ "fail[ed] to conduct a proper initial review," citing a single decision from the Northern District of Illinois.  *Id.* (citing *Nicole W. v. Saul*, No. 2020 WL 3799158, at *9 (N.D. Ill. July 7, 2020)).  The Court is not persuaded by this sole, non-precedential decision and will apply the United States Supreme Court's substantial evidence standard.

B.     **Failure to Address Katherine's Fatigue**

With respect to Katherine's complaints of fatigue, Katherine argues the ALJ erred by: (1) failing to make a "step two" determination as to whether the fatigue constituted a severe impairment; and (2) failing to mention the fatigue in determining Katherine's RFC. Having conducted a *de novo* review of these issues, the Court finds the ALJ did not err in failing to determine whether the fatigue was a severe impairment, and that the ALJ's failure to consider Katherine's fatigue at the remaining steps and in determining Katherine's RFC was harmless error. The Court therefore **adopts** the Magistrate Judge's conclusion that the ALJ's failure to mention Katherine's fatigue does not warrant remand, but the Court **modifies** the reasoning behind that conclusion, which the Court explains below.

In her step two analysis, the ALJ found that Katherine had several severe impairments, including: Dupuytren's contracture in bilateral hands; left foot plantar fascial fibromatosis; right foot valgus deformity; degenerative joint disease of bilateral feet and hands; rheumatoid arthritis; hypertension; major depressive disorder; generalized anxiety disorder; and panic disorder without agoraphobia (Filing No. 8-2 at 28).  The ALJ further found

> all impairments other than those enumerated above, alleged and found in the record, are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to result in more than minimal work-related restriction for a continuous period of at least 12 months, are not expected to result in death, and/or have not been properly diagnosed by an acceptable medical source as defined in the regulations.

*Id.*  The ALJ then listed several of Katherine's non-severe conditions but did not specifically identify fatigue as a non-severe condition.

At step two, the ALJ must determine whether a claimant has a severe impairment or combination of impairments. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010).  However, step two merely presents "a threshold issue". *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012).  "So

5

long as the ALJ finds *one* severe impairment, the ALJ is obligated to move on to the remaining steps in the five-step analysis, where he considers 'the entire constellation of ailments.'" *Garza v. Kijakazi*, No. 21-2164, 2022 WL 378663, at *2 (7th Cir. Feb. 8, 2022) (quoting *Castile*, 617 F.3d at 926–27 (emphasis in original). For that reason, whether Katherine's fatigue is severe "is of no consequence with respect to the outcome of the case." *Castile*, 617 F.3d at 927. Because the ALJ found that Katherine suffered from at least one severe impairment, the ALJ did not err by failing to determine whether Katherine's fatigue was also a severe impairment.

Katherine argues that the ALJ's failure at step two affected the ALJ's step-three determination of whether any of Katherine's severe impairments were *per se* disabling, and affected the ALJ's RFC determination. However, "[a] finding at step 3 that a claimant is *per se* disabled under a listed impairment is a very high bar and requires that the claimant meet or equal all of the criteria specified in a listing." *Garza*, 2022 WL 378663, at *2. The ALJ concluded that Katherine did not meet the criteria for listings 1.18 (abnormality of a major joint in any extremity); 14.09 (inflammatory arthritis); 4.00(H)(1) (hypertension); 12.04 (depressive, bipolar, and related disorders); 12.06A (anxiety disorder); and 12.06B (panic disorder). Katherine does not point to any listing for which she would have satisfied *all* criteria had the ALJ considered evidence of her fatigue. Accordingly, the Court finds no error in the ALJ's step three determination.

With respect to the RFC determination, the Court shares the Magistrate Judge's concern about the ALJ's failure to mention Katherine's fatigue. However, the Court also agrees with the Magistrate Judge that this error was harmless. Harmless error occurs when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The Magistrate Judge concluded

6

that the ALJ's omission of Katherine's fatigue did not warrant remand because Katherine did not identify "any medical opinions or other evidence that would compel restrictions greater than the range of unskilled work the ALJ found her capable of completing". (Filing No. 18 at 8 (emphasis added).) Having reviewed the issue *de novo*, the Court agrees with the Magistrate Judge. Katherine has not offered any evidence showing that her fatigue compels greater limitations than those imposed by the ALJ.

Although Katherine's medical records contain references to her fatigue, nothing in the medical records shows that her fatigue warranted any work restrictions beyond what the ALJ imposed in her RFC determination.[2] Katherine's reliance on the hearing testimony is likewise unavailing. Katherine notes that the vocational expert testified that the need for breaks could preclude full-time competitive employment, or even be a work preclusive limitation (Filing No. 19 at 3). But Katherine has not pointed to any testimony or other evidence that her fatigue causes her to need any such breaks. To the contrary, Katherine's hearing testimony shows that her foot pain, not her fatigue, caused her need for breaks:

> EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE:
>
> Q     And how often do you elevate your legs?
>
> A     Oh, as often as I can. Every time I sit down I --
>
> Q     All right. So. --
>
> A     -- do not put my feet on the floor.
>
> Q     About how many times a day would you say that or is it less than that?

---

[2] Katherine argues that a lack of medical opinions showing greater restrictions cannot be used to attack her credibility (Filing No. 19 at 2–3). This argument misses the mark. The Magistrate Judge did not find that the lack of medical opinions made Katherine's subjective allegations less credible. Rather, he found that the lack of medical opinions showed that the ALJ's decision would not have changed even if she had considered Katherine's fatigue (Filing No. 18 at 8). Katherine's credibility plays no role in that finding.

> A I do this a lot all day.
>
> . . . .
>
> Q Okay. And then how long do you need to sit before you get up and keep walking or standing?
>
> A I would say probably about five to ten minutes. I just need to sit down until the pressure comes off of my feet and then I'm able to get back up --
>
> Q Okay.
>
> A -- and do it again.
>
> . . . .
>
> EXAMINATION BY CLAIMANT ATTORNEY:
>
> Q . . . How many times per day do you find yourself propping your feet up?
>
> A Oh. I would probably say – I can't say all day, can I?
>
> Q Just speak honestly. So if it's all day, I mean whatever you actually do is what we want to hear.
>
> A Oh. Okay. Well, I would probably say at least six or seven times a day.
>
> Q Six or seven times a day. And how long do you keep your feet propped each time, on average?
>
> A I would probably say about 10 to 15 minutes.
>
> Q Okay.
>
> A Average.
>
> Q And do you ever have to lay down throughout the day because of the pain?
>
> A I do. I do try to take a nap and I would probably say around 2:00 through -- I don't know, I sleep about an hour or two hours.

(Filing No. 8-13 at 30–40).

Katherine cites no medical records, hearing testimony, or other evidence showing that her fatigue required her to take breaks, or showing that her fatigue required her to take more or longer breaks than her foot pain required her to take. In making her RFC determination, the ALJ expressly

8

considered Katherine's need to take breaks from standing due to her foot pain (Filing No. 8-2 at 31) and accordingly placed additional limitations "of walking and standing four hours in an eight-hour workday" (Filing No. 8-2 at 35). So even if the ALJ had considered the available evidence of Katherine's fatigue, Katherine has not shown how that evidence would have changed the ALJ's determination. The ALJ committed harmless error in failing to mention Katherine's fatigue.

**C.     Subjective Symptom Analysis**

Katherine lastly objects to the Magistrate Judge's conclusion that the ALJ appropriately assessed Katherine's subjective symptoms under Social Security Ruling ("SSR")16-3p (Filing No. 19 at 3–4). "In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p and articulate the reasons for the credibility determination." *Karen A.R. v. Saul*, No. 1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019). Under SSR 16-3p, the ALJ must first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Then, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.* at *3-4.

In evaluating the intensity and persistence of the claimant's symptoms, the ALJ considers the claimant's subjective symptom allegations in light of her daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3). SSR 16-3p states that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are

a source of distress and may show that they are intense and persistent." SSR 16-3p, 2017 WL 5180304, at *9. The rule continues that "if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*.

A court will overturn an ALJ's credibility finding only if it is "patently wrong". *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal quotation marks and citation omitted). An ALJ's evaluation is "patently wrong" and subject to remand when the ALJ's finding lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Cassandra S. v. Berryhill*, No. 18-00328, 2019 WL 1055097, at *5 (S.D. Ind. Mar. 6, 2019). To avoid being overturned, the ALJ must justify her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

In her Brief in Support of Complaint, Katherine contends the ALJ merely recited information from Katherine's medical records and failed to conduct any analysis before concluding that the success of Katherine's treatments and her gaps in treatment indicated that Katherine's symptoms were not as severe as she alleged. (Filing No. 19 at 4.) Katherine further contends the ALJ's conclusion ignored evidence of the short-lived nature of the treatment's successes and ignored Katherine's other ongoing treatments during certain gaps. The Magistrate Judge disagreed, concluding that the ALJ had considered the type of evidence Katherine claims she omitted and had provided sufficient reasoning for her conclusion. In her objection to the Report and Recommendation, Katherine rehashes the same arguments, contending that the ALJ

mischaracterized evidence and lacked an evidentiary basis for her conclusion. After reviewing the issue *de novo*, the Court again agrees with the Magistrate Judge.

The ALJ identified several ways in which Katherine's treatments had been successful, indicating that her symptoms may not have been as severe as alleged. For example, the ALJ noted that Katherine started physical therapy in March 2019 and after attending nine of thirteen scheduled visits, "reported much better heel pain and could lie down in bed without needing [a] cushion on the back of her foot" (Filing No. 8-2 at 32). The ALJ then described Katherine's injection treatments with a pain clinic beginning November 2019, which provided some success in pain reduction. *Id.* Notably, the ALJ found that Katherine continued her treatment with the pain clinic through approximately April 2021, and that "[i]n January and February 2021, [Katherine] reported being happy with her prescribed medications, but complained of right foot pain awaiting an MRI". *Id.* The ALJ also noted that Katherine attended five physical therapy sessions beginning in June 2019, which resulted in "an increase in [Katherine's] functioning". *Id.* at 33. Further, the ALJ stated that in September 2020, Katherine began physical therapy for her left foot pain, and in October 2020, she reported "feeling 75% better with therapy with a decrease in her foot pain." *Id.*

However, the ALJ did not ignore the limits of the success of Katherine's treatments. For example, the ALJ noted that despite Katherine's successful physical therapy in March 2019, Katherine still "continued to have problems with knots on the bottom of her feet" and, in May 2019, returned "with complaints of pain in the left foot after falling". (Filing No. 8-2 at 32.) With respect to Katherine's injection treatments beginning November 2019, the ALJ stated that Katherine "reported 50% relief after the injections to her fingers, and 100% pain relief after the right foot injection in June 2020 with a repeat injection in August 2020." The ALJ also mentioned

that after seven successful physical therapy sessions between September and October 2020, Katherine stopped therapy "due to irritation of the knots on the bottom of her foot". *Id.*

The ALJ appropriately considered the limited successes of Katherine's treatments in finding that those limited successes indicated that Katherine's symptoms were not as severe as alleged. Although Katherine contends that "[a] positive response to treatment is not by itself inconsistent with allegations of disabling symptoms," a positive response could still show that the symptoms are less severe as alleged. (Filing No. 19 at 4.)

The ALJ also cited the gaps in Katherine's treatment history due to her failure to follow up in concluding that her symptoms were not as severe as alleged. In her conclusion, the ALJ specifically identified the ten-month gap in Katherine's treatment with Dr. Tahir. Katherine argues that the ALJ and Magistrate Judge failed to explain "why it is so important that Katherine did not see one doctor for a period of time," and ignored evidence of the other treatments she was receiving during that ten-month period. (Filing No. 19 at 4.)

The ALJ's decision cited the ten-month gap in Katherine's treatment with Dr. Tahir as an example of Katherine's failure to follow up on her treatments. "[T]he record shows gaps in treatment history, due to the claimant's failure to follow up *as in a ten-month gap in treatment with Dr. Tahir*; which suggests the claimant's impairments are not as severe as alleged." (Filing No. 8-2 at 35) (emphasis added). The ALJ identified other instances in which Katherine failed to follow up with treatments, including her failure to continue the physical therapy she began in June 2019 after five sessions, and her failure to continue the physical therapy she began in September 2020 after seven visits. (Filing No. 8-2 at 33–34.) The ALJ appropriately concluded that the gaps in Katherine's treatment history, not merely the sole ten-month gap in her treatment with Dr. Tahir, indicated Katherine's symptoms were not as severe as alleged. (Filing No. 8-2 at 35.) Further, the

ALJ discussed in detail the treatments that Katherine received during the ten-month gap in her treatment with Dr. Tahir. (Filing No. 8-2 at 33–34.)

Katherine points to no evidence that the ALJ failed to consider in making her subjective symptom determination. The ALJ fully acknowledged the limitations of the successes in Katherine's treatment and her history of treatment during gaps in other treatments. The ALJ nevertheless concluded that the successes in Katherine's treatments, though limited, and the gaps in treatment as a result of Katherine's failure to follow up indicated that Katherine's symptoms were not as severe as alleged. The ALJ's conclusion was not patently wrong. It was adequately supported by "specific reasons supported by the record," and remand is therefore not warranted. *Pepper*, 712 F.3d at 367.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that there is no error in the Magistrate Judge's Report and Recommendation and therefore **OVERRULES** Katherine's objections (Filing No. 19). The Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation **with modification**, **AFFIRMING** the Commissioner's decision (Filing No. 18). Final judgment will issue under separate order.

**SO ORDERED**.

Date:   9/30/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kirsten Elaine Wold
HANKEY LAW OFFICE
kwold@hankeylaw.com

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov